UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | |
|---|---|
| Gregory Taylor, | CASE NO. 5:25 CV 1129 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| Sheriff Kandy Fatheree, et al., | Memorandum of Opinion and Order |
| Defendants. | |

**INTRODUCTION**

This matter is before the Court upon the Motion for Judgment on the Pleadings filed by Defendants Sheriff Kandy Fatheree and Summit County, Ohio. (Doc. 10.) This is a Section 1983 case. For the reasons that follow, the motion is DENIED.

**BACKGROUND**

For purposes of ruling on the pending motion, all well-plead factual allegations in the Complaint (Doc. 1) are presumed true. Plaintiff Gregory Taylor ("Taylor") worked for the Summit County Sheriff's Office (the "Sheriff's Office") from October 28, 1996, until he retired as Sergeant on May 30, 2023. Thereafter, the Sheriff's Office retained his services as a Special Deputy beginning May 31, 2023. As a Special Deputy, Taylor performed his duties competently and professionally, receiving no disciplinary actions or performance concerns.

During the November 2024 election cycle, Defendant Sheriff Kandy Fatheree ("Sheriff Fatheree") sought re-election as a Democrat against Republican challenger Shane Barker

("Barker"). Barker and Taylor have been best friends since childhood. Taylor did not help Barker with his campaign and Barker never asked for his assistance, but Barker did invite Taylor and other Summit County employees to attend his election night party. Taylor attended that event on November 5, 2024.

Sheriff Fatheree won re-election over Barker. Less than two weeks later, after discovering that Taylor attended Barker's election night event, Sheriff Fatheree terminated Taylor's employment on November 18, 2024. Taylor alleges that Sheriff Fatheree terminated his employment because he went to Barker's campaign event, viewing such attendance as disloyalty to her administration.

Taylor filed suit against Sheriff Fatheree and Summit County, Ohio ("Summit County") (together, "Defendants") under Section 1983, alleging that Defendants violated his First Amendment rights of political expression and association when they terminated his employment because he attended a political event. Taylor also alleges that Sheriff Fatheree is civilly liable for criminal actions under Ohio Rev. Code § 2307.60(A) because she violated Ohio Rev. Code § 2921.44(E) and § 2921.45(A). Defendants now move for judgment on the pleadings. Taylor opposes the motion.

**STANDARD OF REVIEW**

A "motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion." *Mellentine v. Ameriquest Mortg. Co.*, 2013 WL 560515, at *3 (6th Cir. Feb. 14, 2013) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be

granted only if the moving party is nevertheless entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

Thus, "[w]e assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 2009 WL 1884445, at *1 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept 'the bare assertion of legal conclusions' as enough, nor does it 'accept as true . . . unwarranted factual inferences.'" *Gritton v. Disponett*, 2009 WL 1505256, at *3 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**ANALYSIS**

In their motion, Defendants contend that Taylor's claims fail because Sheriff Fatheree is entitled to qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In resolving a government official's qualified immunity claims, courts look to whether (1) the facts that the plaintiff has alleged or shown establish the violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court addresses each in turn.

### A. Taylor Has Alleged a Violation of His First Amendment Rights

Taylor's complaint alleges that he was subjected to political-affiliation retaliation in violation of the First Amendment. The Sixth Circuit has instructed district courts to analyze an Ohio special deputy's First Amendment retaliation claims under the same framework as government employees. *See Gratsch v. Hamilton Cnty.*, 12 F. App'x 193, 202 (6th Cir. 2001). An employee's First Amendment retaliation claim is analyzed under a burden-shifting framework. The employee must first make a prima facie case of retaliation, which comprises the following elements: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).

If the employee establishes a prima facie case, the burden then shifts to the employer to demonstrate "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) (internal quotation marks omitted). "Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims." *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012).

A plaintiff bringing a retaliation claim based on political affiliation need not show that he or she was actually affiliated with the particular political group or candidate. *Dye*, 702 F.3d at 300. "[R]etaliation based on perceived political affiliation is actionable under the political-affiliation retaliation doctrine." *Id.* (adopting the reasoning of the First Circuit in *Welch v. Ciampa*, 542 F.3d 927 (1st Cir. 2008) and the Tenth Circuit in *Gann v. Cline*, 519 F.3d 1090, 1094 (10th Cir. 2008)); *see also Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016).

Here, Taylor has sufficiently plead a prima facie claim of retaliation.[1] First, he has alleged he engaged in protected conduct by attending Barker's campaign event. *See Dye*, 702 F.3d at 298–

---

[1] In the face of the controlling case law, Defendants argue only that Taylor has not really alleged a claim based on perceived political association because the words "perceived" or "perception" do not appear in his complaint. In doing so, Defendants ignore that this Court must construe all well-plead factual allegations and all reasonable inferences in the light most favorable to Taylor. *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021).

According to Taylor's complaint, he attended Barker's campaign event. Attending a campaign event suggests support for that candidate. After she found out about his attendance, Sheriff Fatheree dismissed Taylor from his position as a special deputy. Only thirteen days passed between Barker's campaign event and his dismissal. Defendants admit that Taylor was never subject to any disciplinary actions. So, while Defendants maintain that Sheriff Fatheree had a legitimate, nondiscriminatory reason for relieving Taylor of his duties, at this stage, the plausible inference from the pleadings before the Court is that Sheriff Fatheree terminated Taylor's relationship with

5

302 (citing *Murphy v. Cockrell*, 505 F.3d 446, 452 (6th Cir. 2007) ("[S]upport for a political candidate falls within the scope of the right of political association." (internal quotation marks omitted))); *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021) ("[A]ttending political functions in support of candidates . . . [is a] paradigmatic example[] of protected speech.").

Second, his termination was an adverse action that would deter a person of ordinary firmness from exercising their right to political association. *Dye*, 702 F.3d at 303 ("It is elemental that terminations are adverse employment actions."); *Handy–Clay v. City of Memphis*, 695 F.3d 531, 545 (6th Cir.2012) ("The term 'adverse action' has traditionally referred to actions such as discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote." (internal quotation marks omitted) (alteration in original)).

Third, he has alleged a sufficient causal connection between his perceived political association and his termination because he was terminated a mere thirteen days after he attended Barker's campaign event. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."); *see also Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding three-month gap between protected speech and adverse employment action evinced temporal proximity

---

the Sheriff's Office because she perceived a political affiliation with her opponent after he attended Barker's campaign event.

significant enough to constitute sufficient evidence of a causal connection for the purpose of satisfying plaintiff's burden of demonstrating a prima facie case of retaliation).

### B. This Court Cannot Determine Whether Sheriff Fatheree Is Entitled to Qualified Immunity on Defendants' Motion for Judgment on the Pleadings

It is clearly established that, with a few exceptions, a government official violates the free speech rights of a public employee if the official discharges or demotes an employee because the employee supports a particular political candidate. *Heffernan v. City of Paterson*, 578 U.S. 266, 270 (2016). Termination on this basis is unlawful whether that support is actual, or only perceived. *Id.* at 273; *see also Dye*, 702 F.3d at 299. Further, *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996) extends these protections to persons in positions akin to government employees, specifically "independent contractors" and "regular provider[s] of services." *Id.* at 715, 726 ("We cannot accept the proposition, however, that those who perform the government's work outside the formal employment relationship are subject to what we conclude is the direct and specific abridgment of First Amendment rights described in this complaint.").

Behind these clearly established precedents is other controlling political affiliation jurisprudence that has explicitly refused to delineate the reach of free speech rights in the employment context based merely on the title attributed to an individual's position. *O'Hare*, 518 U.S. at 726 ("We decline to draw a line excluding independent contractors from the First Amendment safeguards of political association afforded to employees."). Said another way, the law has developed such that it is not an individual's title that determines whether they are afforded First Amendment protections—it is their relationship with the government that does. *See Sowards v. Loudon Cnty.*, 203 F.3d 426, 439 n.4 (6th Cir. 2000) ("We emphasize again that the actual duties of a particular position, and not its title, govern the *Elrod/Branti* [exception] analysis. . . . Therefore,

in deciding whether the law was clearly established for the purpose of qualified immunity, we look for decisions that involve positions with the same or similar statutory duties.").[2]

Given these precedents, this Court must ascertain whether special deputies are akin to formal employees and/or independent contractors in order to determine whether the law clearly established at the time of Taylor's dismissal that Sheriff Fatheree could not terminate a special deputy because of his or her perceived political affiliation.[3] The pleadings before this Court suggest that a special deputy may fall somewhere between a formal employee and an independent contractor, but it would be inappropriate for this Court to make any specific factual determinations at this posture. Accordingly, Defendants' Motion for Judgment on the Pleadings is DENIED.

---

[2] The Supreme Court has reiterated that "[t]he constitutional harm at issue in the ordinary [political affiliation] case consists in large part of discouraging employees—both the employee discharged (or demoted) and his or her colleagues—from engaging in protected activities. The discharge of one tells the others that they engage in protected activity at their peril." *Heffernan*, 578 U.S. at 273 (citing *Elrod v. Burns*, 427 U.S. 347, 359 (1976)). Refusing distinctions based on mere titles helps prevent this type of constitutional harm. *O'Hare*, 518 U.S. at 712 (warning that allowing constitutional claims to turn on how an employment relationship is classified would "invite manipulation by government, which could avoid constitutional liability simply by attaching different labels to particular jobs" (citing *Umbehr*, 518 U.S. at 679)).

[3] The Court has thoroughly considered the Sixth Circuit's jurisprudence concerning when a right is clearly established for purposes of qualified immunity, including *Hicks v. Crowley*, 2025 WL 2993748 (Oct. 24, 2025), which Defendants moved to offer as supplemental authority. Accordingly, Defendants' Motion for Leave of Court to File Notice of Supplemental Authority in Support of Motion for Judgement on the Pleadings is unopposed and GRANTED. (Doc. 13.)

That being said, the lack of a precedential case mimicking the facts here does not, by itself, excuse Sheriff Fatheree's alleged violation of Taylor's clearly established rights. The proper standard is that the "contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985)).

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleading is DENIED.

IT IS SO ORDERED.

                                                  /s/ Patricia A. Gaughan
                                                 PATRICIA A. GAUGHAN
                                                 United States District Judge

Dated: 12/5/25